Ruffin, C. J.,
dissentiente. I find it established as a , rule of law, that the possessor of real property is liable for any injury received by reason of a nuisance on or at•, his premises, whether the nuisance be caused by himself, j or his servants, or by persons contracting to do work for | *564 him on the premises. The propriety of the rule is easily understood, in respect of the owner, and his own servants, in the ordinary sense of the term. In respect to contractors to make improvements, it is not so obvious. I must say, with Chief Justice Eyre, that I should have had great difficulty in discovering the principle, which creates a liability of the owner of property for the negligence of persons, who contract with him to do work on it by the job and not under his particular direction. But the principle is settled, and in the case of Burk v. Stinman, 1 Bos. & Pul. 405, it was put on the ground, that the owner of real property is bound not to suffer even contractors to do any thing on his premises, for his benefit, which may ■work a prejudice to other persons. Hence it was held, that, as laying materials in the street, which were to be used in building a house on the adjacent land of the defendant, would be a nuisance, if done by the defendant or by his family, which would render the owner responsible for any injury occasioned by it, so it would also, if done by one, who contracted for a certain sum to build the house out and out. Mr. Justice Rooke said, that one, who has work going on upon his own premises, must be civilly liable for the acts of those, whom he employs there; and it will be intended that he has a control over the persons who work on his premises, and, if he deprive himself of it, he cannot be permitted to screen* himself thereby from an action. It will be at once perceived, that the liability, thus stated, does not arise from considering the contractor as the servant of the owner ; for, if that had been the ground, it would have depended on the common maxim of réspondeat superior. But the Chief Justice said expressly, that the relation of master and servant, as commonly exemplified, was not sufficient; and then he adds, that a general proposition, that a person' shall be answerable for any injury,.which arises in carrying into execution that which *565 he has employed another to do, seems to be too large and loose. Mr. Justice Heath, likewise, particularly repudiates the idea, that the liability of the land holder grew out of a relation of master and servant between himself and his builder. Hence the whole Court places his responsibility on the single ground, that every owner oí real estate is bound to prevent nuisances on his premises, which are created in the course of doing work there for him by any body or on any terms ; for he has no more right to allow others to erect nuisances on his premises than to do so himself. That is the doctrine of that case, which is the leading one on this subject. But it has been distinctly stated, and adopted by almost every eminent modern Judge in England. In Laugher v. Pointer, 5 Barn. & Cres. 547, Mr. Justice Littledale treats the liability of one for the acts of another, whom he hires to do a job, as peculiar to such work as is done on real propertju As to such property, he admits, that one in possession must have the property so managed as not to injure others, whether it be managed by his own immediate servants, or by contractors or their servants ; and he assigns the same reason, that the wrong is in the nature of a nuisance, for which the occupier ought to be liable, when occasioned by the acts of persons, whom he brings on the premises : he, too, excluding the idea, that the contractor, as such, is the servant of the proprietor of the house under repair or being built. And that learned Judge contra-distinguishes the doctrine as to personalty from that stated in respect to the realty in a most striking manner. He says, moveable property is sent out into the world by the owner, to bo conducted by other persons. The common intercourse of mankind does not make a man or his own servants always accompany his property of that kind, and he must in many cases confide the care of it toothers, who are not his servants, but whose employment it is to take care of it — as carriers, factors, ^nd *566 the like. Chief Justice Abbott said also, that the owner of a mine or a house was liable for what was done by persons immediately or mediately employed by him in working on them, because the owner has the control and management of all that belongs to the mine or house, and therefore it was his fault not to exert his authority, so as to prevent a nuisance, to the injury of another. Baron Parke quoted those positions, almost literally, in delivering the opinion of the Court of Exchequer in Quarman v. Burnett, 6 M. & W. 499; and again in Rapson v. Corbett, 9 M. & W. 710, he states the doctrine thus: “that if a man has anything done on his own premises, he must take care to injure no man in the mode of conducting the work.” There are other cases to the same effect; but more need not be quoted to this point. Those cited sufficiently show the proposition before stated, that the owner of real estate is liable for all the nuisances erected on it, not only by one who stands towards him in the relation of a servant, but also by one in the relation of a contractor to do a job of work on the land.
But I deduce clearly from those cases, and venture to lay it down asa necessary part of this doctrine, that, if one contract with another to build him a house on his land, whatever is done in collecting materials, or hewing stone, or framing timber, or making any otherpreparations for the building by' the contractor, at a distance from the place, where the house is to be erected and not at all on the premises of him, for whom the work is to be done, the latter cannot be held liable for a nuisance caused by his builder at the distant point, at which he carried on his preparations. Before the things are carried to their destined spot —that is, while they are not “on the premises” — the proprietor of the land cannot be liable, within the principle of those decisions. It is only on his premises, that the owner has “that control and management,” by reason of which the law deems it his fault to allow of an injury *567 lo any one there. Take the case of Burk v. Stinman, to exemplify the distinction. A quantity of material was to be brought by persons employed under a man, with whom the defendant bargained for the building out and out of a house by the road side, and it was laid in the road near the place and a carriage was upset by it and the persons hurt; and the owner of the 1 and was held liable upon the ground before stated, namely, that the damage arose from a nuisance created at his premises for his benefit. But suppose, that, instead of the materials being carried to the premises and laid there, the carters, in bringing them towards the place, had, a mile off. negligently driven against a passenger, or wilfully thrown down their loads in the road and a coach had run over the heap: it may, as it seems to me, be deemed certain, that neither of the Judges, whose opinions have been quoted, would have subjected the owner of the land, on which the house was to be built. I cannot perceive the slightest pretence on earth for his liability. One can be at one’s own house or place, so as to prevent or abate any nuisances there : and therefore the law may enjoin it on one to do so, upon the maxim, sic utere tuo, ut alienum non Icedas. But by no pos« sibility can one be at all those places, where all thé persons, whom one may be under the necessity of employing about personal matters, may happen from time to time to be, so as to correct their misdoings Indeed, the employer would have no authority over them ; and the law cannot intend, that he must go away from his own premises to look after people, who contracted to bring him the materials he wanted. Until they be placed on his premises, or at the place whence they are to be taken for application directly to the building, they are not the materials of the land owner nor to any purpose subpotestate ejus. If Burk v. Stinman had been that case, we may be at no loss to say, that the judgment would have been for the defendant. Now, the present case seems to be juft *568 the one supposed. The defendant had a building two hundred yards off and contracted with another man fora round sum to remove it to the defendant’s lot — the contractor to be at all the expense, and to have the exclusive management of the job; and the contractor, having moved the house from the land, on which it formerly stood (which did not belong to the defendant) and got the house into the street, committed a nuisance by digging a hole in the street, at a distance of nearly two hundred yards from the defendant’s ground. That is the case, and the question is, whether the employer is liable for t7i«i nuisance ? I may be mistaken ; but I entertain a very ■decided opinion, that he ought not tobe. It is plain, that it is not within the class of cases of which I have been speaking ; for. the wrong was not done on the defendant’s premises, nor near them, nor in respect of them, but was done at a considerable distance, and about a purely personal chattel. Therefore Burk v. Stinman, and all its derivatives, are inapplicable here ; or, rather, upon their reasoning, they show negatively, but conclusively, that the defendant is not liable. But, furthermore, if the defendant was present, when the hole was dug in the street —as it seems he, probably, was — it can make no difference; for he had no authority over the contractor, nor powers® give a single order. In other words, the contractor was acting, independently, for himself, under an agreement to do the work, and not as the servant of the defendant.
That brings me to another ground, on which it is supposed a liability of the defendant may be raised ; which is, that the relation between those parties is that of master and servant. In the arguments at the bar the counsel confined their observations entirely to the point I have been considering, and did not suggest the other, of master and servant. Therefore I did not turn my attention to it until recently. But I confess my researches and reflections lead me to a very clear opinion on it also, in favor *569 of the defendant. I admit, of course, the liability of a master for the injuries done by his servant in the cdurse of his employment. But two persons must first be master and servant, before there can be a responsibility on one for the acts or omissions of the other. The question is, what makes them so — what constitutes that relation. I own, it is new to me, that, in a legal sense, so as to create responsibilities of the one for the other, the procuring of work to be done for one by another creates that relation, so that, if, by the negligence or want of skill of the latter in doing the work, a third person is injured, then' the person, at whose instance the work is done, shall answer for the injury. My notion has been, that the point depended upon the manner, in which the workman was employed — whether, as the servant of the employer, or' under an independent contract, by which the parties remain in equuli jure. In other words, that the rule, that a man shall be liable for his own servant, applies only to a servant; and, therefore, the first thing, always, is to show, that the relation subsists. Now, what are the characteristics of that relation — how do we know, when two men are master and servant 1 I admit that the mode of compensation, merely, does not determine the question conclusively; for a servant may be paid by the year, month, day, or job; though the mode may help, with other things, to show how the parties themselves regard each other. But there is a certain method of distinguishing a servant, of any kind, from persons sui juris — which is, by knowing, whether the person employed is subject to the orders and control of the employer in the execution of the work he is to do, or not. If the employer has a right to have the work done as he pleases, can change the plans and periods of it from time to time, to suit his fancy or his other business — in fine, if the hired man works under the other — then one is master, and the other is servant; but, otherwise, not. Hence, officers of companies, hands *570 on cars or ships, deputies, as well as menials and domestics, are properly and truly servants. They are under the direction of the superior, and therefore the superior answers for them. But those officers and hands, or any other carrier, whether a head or subordinate, are not the servants of one, whom or whose goods they carry'. "Why? Because they do their work, not under the control of the passenger or freighter, but they are guided by some other superior or go their own way. So it is, as between all other persons, who employ and are employed. In the cases hitherto cited that view is taken of this point. In Burk v. Stinman, Heath, J., admitted distinctly, that the persons, who hauled the lime, were not the defendant’s servants, although doing work for him on his premises ; but he said, the action did not depend on that relation, and the defendant was liable, though the others were not his servants. Why was he not their master ? Obviously, because they did not work under him. They were the servants of a contractor, who had undertaken to build the house. He was, therefore, not the servant of the defendant, and, of course, his servants were not; but they were the servants of their own master. It will be remembered, that in the passage already' quoted, Chief Justice Eyre expressly disclaimed the relation of master and servant, in its ordinary' acceptation, subsisting between any of those parties ; and that he most emphatically repudiated the notion, that the defendant was to be brought in under the “large and loose proposition,” that a man was to be answerable for every injury arising in carrying into execution that, which he has employed another to do. The observation naturally suggests itself here, that it is quite surprising the Court, in all those cases, should have been put to such difficulty to find the ground, on which the land owner was to be held liable for injuries sustained during the progress of the work on his premises from the acts of the contractor and job men, *571 if they, the contractor and job men, were servants by force merely of their being job men and contractor, as is urged against the present defendant. Would those learned Judges have been apt to look over so good a ground, and so plain before them ? But they did more. They did not merely over look it; but they went further, and condemned and rejected it. But there is another case still stronger. In 1842, the case of Repson v. Cebitt, 9 M. & W. 710, was before the Court of Exchequer, in which the facts 'were, that a builder was employed to make alterations in a house, including gas-fixings, and he made a contract with a gas fitter to do that part of the work; and in the course of its execution the gas exploded through the gas-fitter’s negligence and hurt the plain-? tiff, who sued the head contractor. But it was held the action would not lie. Now there is no doubt, that the gas fitter and the owner of the premises were, each, liable ; the former, for his own default; and the latter, as owner of the premises where the injury was sustained, but not as master of the gas fitter ; for he was servant to no one, not even the builder who employed him. Why was he not servant to the builder, and the latter, accordingly, liable for his negligence 1 The judges state the reason distinctly, and truly, as far as I am capable of understanding it. Lord Abinger says, Cebitt was not liable, because Bland, the gas-fitter, “did not stand in the relation of servant to him, but was merely a sub contractorwhich plainly means, that the one was not servant to the other, because he was e.subcontractor. Baron Parke says, Bland was a subcontractor to do certain of the works, and therefore the relation of master and servant did not subsist between him and the defendant. Those positions are so explicit, and so tersely expressed as not to be susceptible of misapprehension ; and one would suppose, that no one( with them in his mind, could be at a loss to determine the relation between the parties here; in whose acts and *572 dealings there is nothing equivocal, that can confound. It is a distinct job, undertaken by the contractor for his own profit,«and upon the strength of his own skill and ability, and at his own risk, without obliging or allowing to the defendant to interfere in the least with the operation. It is, therefore, absolutely, certain, that the defendant had no more authority, morally or legally, over the house-mover, than the latter had over him. They stood exactly upon a par to every intent, as contracting parties, and were not master and servant, unless in the sense that one is the servant of every body, for whom he does any work. There are, indeed, in the books some cases, which turn upon very nice points, as to the facts from which it was inferred, that the employer had or had not the control of a person actually working for him, so as to render the employed the other’s servants. Laugher v. Pointer was one of them. A gentleman hired of a stable-keeper a pair of horses to.draw his carriage for a day, and with the' horses the other sent his own driver, through whose negligence in driving the plaintiff was injured, and an .action was brought aginst the owner of the carriage. Upon the question, whether he was liable, the Court of King’s Bench was equally divided — as, indeed, were nearty all the Judges of England at one time. I confess, I should be at much loss at this day to say, on which side the better argument was. A gentleman cannot judge of strange horses, and the stable-man might not be willing to trust his horses in any hands but those of his own driver. whom he knew, and who knew the horses: and there* fore it would seem to be a case of separate undertaking by the stable-man, and, consequently, not subject to the control of the owner of the carriage. On the other hand, it is difficult to suppose, that a gentleman can intend thus to put himself upon the will and pleasure of a postillion, and there is a presumption, that he really exercises an authority as to the places and manner of driving. But, *573 however doubtful may be the application of the rule to such a case, in order to know, whether those parties stood in the relation of master and servant, the rule itself stands out boldly and truly in all that the Judges say. Hence, Mr. Justice Littledale says, that the job-man was not a servant, because he was carrying on a distinct employment of his own, in which he let his man and horses both to the defendant: that the owner of the carriage, therefore, did not employ the driver and had no power to dismiss him or take the management of the horses from him. It is plain, that by the terms, “distinct employment,” the Judge did not rely upon the stable-keeper’s having a known calling, as a separate possession, as making a difference, except so far as it afforded evidence of the nature of his engagement with the defendant, namely, that he was dealing by way of independent contract, and not as putting himself a servant to every one to whom he let horses. There can be nothing in the calling of the two contracting parties being the same or different; and if the owner of the carriage had been, himself, a livery stableman, and yet chose to hire horses from another, their relation would be like that which, under similar circumstances, would subsist between men of other avocations. If that, however, were material, this ease, as it appears to me, would clearly fall within such a distinction ; for, I protest, that I should be as little competent to move a house as to build one ; and I believe that in large towns removing houses is one of the regular pursuits of life, requiring much skill and experience and strong and expensive apparatus to do it expeditiously, cheaply, and safely. I do not deem that of any importance, however; since I consider the reasons of both the Chief Justice and Mr. Justice Littledale in Laugher v. Pointer, to proceed distinctly upon the principle, that the defendant had barr gained with a job-man for the service by an independent agreement, and therefore the jobman’s servant was not the *574 defendant’s servant — it being enough for one man to be the servant of one master. But the exemption of the defendant did not depend on that quaintness, that the driver was the livery-stable-keeper’s servant and therefore could not be the defendant’s. On the contrary, the driver was not the gentleman’s servant, because his master was not such servant; for, if the stable keeper, himself, had been driving, the defendant would have been as little liable, as his master, as is clear]/ laid down in the subsequent case of Quarman v. Burnett, as the unanimous opinion of the Court of_Exchequer after a vacation for the full consideration, which Lord Denman said it received. There it is admitted, that the hirer of job horses and a driver may-make himself responsible for the driver, by taking the management and order the driver to go in a particular manner. Yet it was distinctly stated, that he would not thus become liable, by virtue of the relation of master and servant. The Court say, first, that the coach-man. who did the injury, is liable ; and, so far from holding, that the stable-keeper would not be liable, if he had driven himself, or that the defendant in that case would have been, they say, secondly, that the stable keeper was liable, as he undoubtely stood in the relation of master to the wrongdoer, having selected him, and having power to control and remove him : And they say, thirdly, that the owner of the carriage was not liable, because he was not the master of the wrong-doer, nor of the wrong-doer’s master. Why was he not ? Because, say the Court further, he was “a third person entering into a contract with libe master” (the job man,) “which did not raise the relation of master and servant at all. To make such a person liable, recourse must be had to a different and more extended principle, namely, that a person is not only-liable for the acts of his own servants but for an injury by the act of another person in carrying into execution that, which that other person has contracted to do for *575 his benefit — which is too large a position.” We may here take notice that the Court lays stress upon the circumstance that the defendant was a hirer by the job, not merely to show that the driver did not become his servant, but also that, for the same reason, the driver’s master did not become the defendant’s servant; for, the words are, that the contract did not raise the relation of master and servant at all. Of course, if the job man was liable for •the neglect of his servant, he would have been for his own, had he gone, just as the coachman, whom he sent, was said to be, that is, as the wrong doer. That case carried with it the whole Court of King’s Bench in the same year, in Milligan v. Wedge, 12 Adol. & El. 737. The case was, that there was a by law in London, that no one but a licensed driver should drive cattle from Smith-field through the City, and that a butcher bought a bullock and hired a drover to drive it to his slaughter pen without the city, and the drover put it in charge of his boy, and by negligent driving, after he had passed through the city, damage was done, and the butcher was sued, and judgment given for him. That is another plain adjudication upon the same principle, namely, that when a man hires another upon an independent contract to do work upon his own responsibility, and not under the orders of the employer, they do not become master and servant. It is in that sense, Lord Denman speaks of the drover, as exercising a distinct calling — as tending to show, that he was not to do the work under the butcher. For, he says, the mischief was done in the course, not of the butcher’s business, but the drover’s; meaning, their business by the contract according to its true construction, in reference to the skill of the several parties and the responsibility each was to have in performing the job. It could mean no more ; for he could not have reference to the authority conferred on the drover by his license, as that did not extend beyond London, and-they had got-out *576 of the city before the damage was done, and were then but common job-men. Indeed, Mr. Justice Coueridge goes on the express ground, that, whether the drover or his boy was driving, the butcher could not be held liable, because he made a contract with the drover, that he should drive the bullock, and left it under his charge', and the relation, therefore, of master and servant did not exist between them. One could hardly expect to find language more apposite to any case-than that is to the present, in support of the positions 1 have thought it my duty to state.
There is still another case to be noticed, that of Martin v. Temperly, 4 Adolp. &, Ei N. S. 298. The defendant owned two barges which he worked on the Thames. By a statute, and a by-law of London, no one but freemen of the Watermen’s Company, or their apprentices, were al. lowed to navigate craft on the river, and there were about six thousand of them. A freeman of the Company was foreman to the defendant and let himself and an appren. lice by the vreek to the defendant, who paid the wages weekly. The case also states, that the foreman waspaV by the defendant by the job for what the apprentice did. The foreman then hired a freeman of the Company by the job and put his own apprentice aboard with him to navigate the barges on a particular day, and they did it so negligently as to injure a vessel belonging to the plaintiff, who sued the owner of the barges and recovered; and, as it seems to me, very properly. To say nothing of one of the hands on board being the apprentice of the defendant’s undoubted servant and being put on board upon a standing contract with the defendant, the liability of the defendant arose from the fact, that the boats wnre then in his service, actually employed in earning money for him. It was the regular course of employment of them and mode of engaging hands for them ; and it was nothing, whether the defendant paid the hands so much a week or so much each-job. of such or such a kind. For, there is no magic' *577 in the term job, which will prevent a person from being liable for another whom he employs under him, and earning profits for him, being under his orders and rule. That is the very principle, for which I contend ; though l say, that if a man is hired, not to earn profit for another or to work under his government, but to do a particular piece of work for him according to his own skill, such a man is not the servant of the other. Now, Martin v. Temperly, so far from militating against those positions, goes explicitly to sustain them. Two objections were taken on the part of the defendant. One was, that he was obliged by act of parliament to employ the freemen, and, being imposed on him, he ought not to be responsible for them. The other was, that they were employed for the job, and therefore were not servants. Both were readily answered. The reply to the first was, that the act of parliament, even, called the Watermen the servants of their employers ; and that, it they were not, there would really be ino body responsible for barges on the river, as there could be no other hands on board but freemen — which could not have been intended. Besides the number was sufficiently great to" allow a proper selection. With that, however, we have no concern now. Our business is with the other point. And upon that Lord Dgktman remarks, that the distinction between Milligan v. Wedge, (in which he presided) and that case was, that in the former, the owner of the bullock had no longer any control over it, but that in the latter it was otherwise. And Mr. Justice Coleridge stated the men were the defendant’s servants, “because they were under his control; that is, in doing the work in the ordinary way.” As to the difference said to arise, where a workman is-paid so much for doing the whole job, he denied its application there, because “the defendant might either pay for a given time or given work, and the men here were as much under the defendant’s control, as a gentleman’s coachman is under that of his master’’ *578 To that I can add nothing to make the case more applicable to the one in hand. It goes, with all the other cases, to establish, that, when a hireling is under the ordering of another, he is his servant; but when one person employs another at a fixed price to do a particular piece of work for him, not on his land, and over which the employer is to exercise no control, they stand in the relation of joint contractors, and not of master and servant. That appears in every' case to be the test — whether the agreement is such, that the one is to have the control over the other— the ordering and rule over him, or the contrary ; and it is an infallible test. If I employ a man to carry me or my goods I am not bound for his acts. If the article I engage him to carry be my carriage and he puts it on rail road cars or into his wagon, in order to transport it, he is my bailee and not my servant, and I am not liable for him. So, if, instead of doing that, he puts his horses to it and carries it on its own wheels, it can make no difference ; and he is still but my bailee. And so it was, when the defendant engaged the man to move his house, and he did it. How is it possible, that man can be called the defendant’s servant? He could not interfere in the work without breaking his contract. Indeed, he had no more authority in law over the house-mover than the plaintiffhimself had. Suppose that a person had employed hands to help him and had contracted debts for machinery with which to perform the operation, would the defendant have been liable for them, as debts contracted by his servant in the course of his employment ? If a person employ another to build him a house out and out, is the employer liable to pay for all the materials the other may buy for the work, because got by his servant for his use ultimately? Surely not, unless we are to resolve all engagements between man and man into such as create the relation of master and servant. It seems to me, in fine, *579 that the defendant is clearly not liable. And I am not able to add any thing, which can make it plainer.
Per Curiam.
Judgment affirmed.